IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LARRY MARTILLUS LEE                                                                          PLAINTIFF

v.                                    Civil No. 4:23-cv-04093-BAB

CAPTIAN RAMI COX; and
JEFF BLACK                                                                                   DEFENDANTS

### ORDER AND MEMORANDUM OPINION

Plaintiff, Larry Martillus Lee filed this action pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Currently before the Court is Defendants' Motion for Summary Judgment on the limited issue of exhaustion. (ECF No. 25). Plaintiff responded. (ECF Nos. 40, 41, 42, 43). Defendants replied. (ECF No. 44). Plaintiff filed multiple sur-replies. (ECF Nos. 46, 48, 49). This matter is now ripe for consideration.[1]

### I. BACKGROUND

Plaintiff filed his original Complaint and Application to proceed *in forma pauperis* ("IFP") on October 3, 2023 in the Eastern District of Arkansas. (ECF Nos. 1, 2). The case was transferred to this Court on October 4, 2023. (ECF No. 3). The Court granted Plaintiff IFP status on October 5, 2023, and ordered Plaintiff to file an amended complaint on the same day. (ECF Nos. 6-7).

---

[1] On April 16, 2024, the parties consented to have the undersigned conduct all proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 30).

1

Plaintiff filed his Amended Complaint on October 19, 2023. (ECF No. 9). In his Amended Complaint, Plaintiff names two Defendants: Captain Rami Cox, the Jail Administrator at the Lafayette County Detention Center ("LCDC"), and Jeff Black, Sheriff of Lafayette County. (ECF No. 9). Plaintiff indicated he was a convicted inmate at the time in issue. *Id.* In Plaintiff's Claim One, he states that Defendant Black violated his constitutional rights on September 25, 2023 through the conditions of Plaintiff's confinement. *Id.* at 4. Specifically, Plaintiff claims he was forced to sleep on the floor because his pod was overcrowded and the population of the LCDC exceeded that which is constitutionally permissible. *Id.* at 5. Plaintiff asserts this claim against Defendant Black in his individual capacity only. *Id.*

In Plaintiff's Claim Two, he alleges Defendant Cox violated his constitutional rights on September 23, 2023 through his conditions of confinement. (ECF No. 9, pp. 7-8). Specifically, Plaintiff complains of his food tray being washed in the inmate shower. *Id.* Plaintiff asserts this claim against Defendant Cox in her individual capacity only. *Id.*

In Claim Three, Plaintiff asserts Defendant Cox violated his constitutional rights on September 22, 2023 by placing him in lockdown without a disciplinary hearing. Plaintiff alleges he was locked down for fourteen days without privileges, cold running water, or his hour out in violation of his due process rights. (ECF No. 9, p. 12).

In Claim Four, Plaintiff asserts Defendant Cox violated his constitutional rights on September 22, 2023 when she placed Plaintiff in a barracks with his known enemy. (ECF No. 9, p. 13). Plaintiff claims Defendant Cox knew of his problem with the other inmate in D-Pod, where he was placed, but she placed him there anyway. *Id.*

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (ECF No. 9, p. 9).

In their Motion and supporting documents, Defendants argue the LCDC has a grievance procedure, which Plaintiff utilized during his incarceration. However, Plaintiff did not exhaust his administrative remedies regarding the claims alleged in his Amended Complaint through the LCDC grievance procedure. (ECF No. 25). Specifically, Defendants argue Plaintiff filed no grievances or requests regarding his conditions of confinement claims in Claims One or Two. Defendants also argue Plaintiff filed no grievance regarding his due process claim in Claim Three. Furthermore, while Plaintiff submitted a grievance, on September 20, 2023, regarding his placement in D-pod with his enemy, he did not appeal this grievance as required by the LCDC grievance procedure. *Id.*

Plaintiff responded to Defendants' Motion with four separate filings. (ECF Nos. 40, 41, 42, 43). First, in his Affidavit, sworn under penalty of perjury, Plaintiff states he did file grievances on all the issues raised in his Amended Complaint, and he did exhaust all administrative remedies available to him through the LCDC grievance procedure. (ECF No. 40). Plaintiff attaches hand-written grievances he purports to be grievances he submitted to Defendant Cox in satisfaction of the LCDC grievance procedure. *Id.* These handwritten grievances include complaints regarding the overcrowding in the LCDC, the trays being washed in the showers, and Plaintiff's failure to protect claim. (ECF Nos. 40, p. 5-9; 41, p. 5). Plaintiff argues his Affidavit, with attached handwritten grievances, and Defendants' evidence are contradictory. Thus, creating an issue of fact as to whether he exhausted his administrative remedies. (ECF No. 41).

Defendants replied, arguing Defendant Cox never received the handwritten grievances Plaintiff attached to his Affidavit, and the LCDC has no record of such handwritten grievances. (ECF No. 44). Defendants submit an Affidavit, sworn under penalty of perjury, from Defendant Cox with their Reply. (ECF No. 44-1). In this Affidavit, Defendant Cox states she did not

3

receive Plaintiff's handwritten grievances that are attached to his Affidavit. Regarding the September 20, 2023 electronic grievance on the failure to protect issue, Defendant Cox states, Plaintiff did in fact request she forward this grievance to the Sheriff. However, since this request was made prior to Defendant Cox's response to the grievance, she did not respond, but forwarded the grievance straight to the Sheriff. *Id*. Plaintiff submitted the electronic grievance on September 20, 2023 and submitted a request it be forwarded to the Sheriff on September 21, 2023. (ECF No. 27-3, p. 19). According to Defendant, this is not the proper procedure under the LCDC grievance procedure. Plaintiff should have waited on Defendant Cox's response then, if he was not satisfied with her response, requested his grievance be forwarded to the Sheriff. (ECF No. 44-1).

Plaintiff filed multiple documents as a sur-reply. (ECF Nos. 46, 48, 49). First, Plaintiff states, in a second Affidavit, sworn under penalty of perjury, that he submitted the handwritten grievances while he was on lockdown without access to the KIOSK. Plaintiff further explains, received copies of those handwritten grievances back without response. Without access to the KIOSK he could not file electronic grievances. Lastly, he states Defendant Cox told him she threw away all his grievance records. (ECF No. 46-1). Plaintiff also moved for attorney's fees and that Defendant Cox's affidavits be struck from the record. (ECF Nos. 48, 49).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with

the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id*. Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id*. To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a

right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

### III. DISCUSSION

The PLRA mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a) (held unconstitutional on other grounds). Exhaustion is mandatory. *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court explained that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The *Jones* Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The parties here do not dispute the LCDC has a Grievance Procedure, and Plaintiff used this procedure throughout his incarceration at the LCDC. Such Grievance Procedure reads in whole:

> **GRIEVANCE PROCEDURES:**
>
> If any inmate/detainee has a grievance against the jail or its personnel, he/she should put it in writing, place it in a sealed envelope addressed to the Jail Administrator. The Jail Administrator shall determine if the grievance is legitimate in nature or frivolous and take any necessary action. If an inmate/detainee is not satisfied with the decision of the Jail Administrator, the inmate/detainee shall request the grievance be forwarded to the Sheriff. The Sheriff shall then determine if the grievance is legitimate or frivolous in nature and take any necessary action.

6

(ECF No. 27-4). In order to satisfy the PLRA's exhaustion requirement, a prisoner must pursue the grievance procedure process to its final stage. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012); *see also King v. Iowa Dep't of Corrs.,* 598 F.3d 1051, 1053 (8th Cir. 2010). It is undisputed the LCDC procedure requires a request for the grievance to be forwarded to the Sheriff, as a type of appeal, if the inmate is unsatisfied with the decision of the Jail Administrator. (ECF No. 27-4).

### A. Claims One and Two

The material facts as to whether Plaintiff filed initial grievances on his Claims One and Two are clearly disputed. Defendants state Plaintiff did not submit electronic or handwritten grievance on the issues of overcrowding and shower tray washing. (ECF Nos. 27-1, p. 1; 44-1, p. 1). Plaintiff, in direct contradiction, states he did submit handwritten grievances while on lockdown without access to the KIOSK and he attaches those grievances to his Response. (ECF No. 40). At this stage, the Court cannot weigh evidence or determine credibility. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000) (explaining the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence as those are jury functions). Therefore, the Court cannot determine, on the record before it, whether Plaintiff exhausted his administrative remedies as to Claims One and Two.

### B. Claim Three

However, there is no genuine dispute regarding Plaintiff's Claim Three for Due Process. There are no grievances on the record, either electronic or handwritten regarding Plaintiff's due process claim. In his Response Affidavit, Plaintiff references a handwritten grievance as his grievance on this issue, however, the grievance Plaintiff references relates to sanitation and

7

unconstitutional conditions of confinement not lockdown or due process. (ECF No.40, pp. 2, 4). Accordingly, the Court finds there are no material facts in dispute regarding the exhaustion of Plaintiff's Claim Three for due process.

### C. Claim Four

Next, Defendants do not dispute that Plaintiff filed an electronic grievance regarding his Claim Four for failure to protect. Instead, Defendants argue Plaintiff failed to properly appeal this grievance. Specifically, Defendants state Plaintiff should not have requested his grievance be forwarded to the Sheriff before the Jail Administrator initially responded to said grievance. (ECF Nos. 44, 44-1). Defendant Cox states in her second Affidavit that on September 21, 2023, one day after submitting the original grievance and before Defendant Cox's response, Plaintiff requested the grievance be submitted to the Sheriff. (ECF No. 44-1).

The Court notes the LCDC grievance procedure is vague and lacking in deadlines or detailed procedure, however, it does clearly state that the inmate "shall" request the grievance to be forwarded to the Sheriff if he is unsatisfied with the decision of the jail administrator. (ECF No. 27-4). Plaintiff does not dispute that he failed to wait on a decision from Defendant Cox prior to requesting his grievance be forwarded to the Sheriff. Accordingly, the Court finds Plaintiff failed to properly exhaust the LCDC Grievance Procedure.

Regarding Plaintiff's argument that Defendant Cox's Affidavits should be struck because they contradict one another, the Court disagrees. Defendant Cox's first Affidavit states that Plaintiff failed to appeal his September 20, 2023 grievance. (ECF No. 27-1). Defendant Cox's second Affidavit simply goes into detail on how Plaintiff failed to appeal his September 20, 2023 grievance—Plaintiff requested an immediate forward to the Sheriff rather than waiting on the Jail Administrator's response. (ECF No. 44-1). There is no reason to strike these Affidavits from

the record or impose any other sanction such as attorney's fees on Defendant Cox.

## IV.  CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment on the limited issue of exhaustion (ECF No. 25) is hereby **GRANTED in part** and **DENIED in part**.   Plaintiff's Claims One and Two shall proceed and Plaintiff's Claims Three and Four are hereby **dismissed without prejudice** for failure to exhaust pursuant to 42 U.S. C. § 1997e(a).

IT IS SO ORDERED this 13th day of November 2024.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE